## Rogers Brothers Coal Company v. Hines, Director General, et al.

(Decided February 21, 1922.)

### Appeal from Muhlenberg Circuit Court.

Carriers—Railroad Company Under Federal Control not Liable for Failure to Furnish Cars.—A railroad company under Federal control is not liable in damages for a failure to furnish a coal company a sufficient number of cars to accommodate its business.

BELCHER & BELCHER for appellant.

TAYLOR, EAVES & SPARKS and B. D. WARFIELD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Rogers Brothers Coal Company sued the Director General of Railroads and the Louisville & Nashville Rail-

road Company to recover damages in a large sum for their failure, after reasonable notice, to furnish a sufficient number of cars to accommodate its business during certain months of the years 1918, 1919 and 1920. The Director General filed an answer in the nature of a plea in abatement, to which a demurrer was sustained. The railroad pleaded non-liability because of federal control and asked to be dismissed. From an order granting its prayer, the coal company prosecuted an appeal not only against the railroad company but against the Director General.

The appeal against the Director General having been dismissed, the only question before us is whether the ruling of the trial court in dismissing the action as to the railroad company was proper. Following his proclamation of December 26, 1917 (40 Stat. at L. 1733), issued pursuant to the act of August 29, 1916, chapter 418, 39 Stat. at L. 619, 645, Comp. Stat. sec. 1974a, the President took possession and control of the Louisville & Nashville Railroad on December 28, 1917, and proceeded to operate it through the Director General under the authority of the Federal Control Act (March 1, 1918, c. 25, 40 Stat. at L. 451, Comp. Stat. sec. 3115-3/4a, Fed. Stat. Ann. Supp. 1918, p. 757), section 10 of which provides in part as follows:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

Thereafter the President, acting by and through the Director General, issued General Order No. 50 and General Order No. 50A, providing in substance that all suits on causes of action arising out of federal control should be brought against the Director General of Railroads, and that the Director General might on application be substituted for the carrier company as party defendant in all pending suits of like character.

Though the acts of omission complained of occurred during the period of federal control, it is insisted that the liability of the railroad company was clearly fixed by section 10, *supra,* of the Federal Control Act. In this connection it is argued that as the section applies not only to suits based on causes of action arising prior to federal control, but to suits based on causes of action arising out of federal control, the word "carrier," necessarily means the railroad company and not the United States Government or its agent having control of the railroad, and that being true, General Orders Nos. 50 and 50A are necessarily inconsistent with the Federal Control Act, and therefore invalid. There is authority for this position. Hines v. Mauldin, 225 S. W. (Ark.) 639; Kansas City R. Co. v. Rogers, 225 S. W. (Ark.) 640; LaValle v. Northern Pacific Ry. Co., 172 N. W. (Minn.) 918; Gowan v. McAdoo, 173 N. W. (Minn.) 440; McGregor v. Great Northern Ry. Co., 172 N. W. (N. Dak.) 841; Franke v. Chicago & N. W. Ry. Co., 173 N. W. (Wis.) 701; Jensen v. Lehigh Valley R. Co., 255 Fed. 795; Johnson v. McAdoo, 257 Fed. 757; Dampskibs Actieselskabet Sangstad v. Hustis, 157 Fed. 862; The Catawissa, 257 Fed. 863. But we have held that the word "carrier," as applied to actions arising out of federal control, does not mean the carrier company which had been divested of all power and control over the operation of the railroad, but means the person actually engaged in operating the railroad, and therefore performing the functions of a carrier. Commonwealth v. L. & N. R. R. Co., 189 Ky. 309, 224 S. W. 847, 11 A. L. R. 1446. Not only is this view supported by the great weight of authority in the federal courts, Rutherford v. Union P. R. Co., 254 Fed. 880; Dahn v. McAdoo, 256 Fed. 549. —— C. C. A.——, 267 Fed. 105; Mardis v. Hines, 258 Fed. 945, ——C. C. A. ——, 267 Fed. 171; Hatcher v. Atchison, T. & S. F. R. Co., 258 Fed. 952; Haubert v. Baltimore & O. R. R. Co., 259 Fed. 361; Nash v. Southern P. Co., 260 Fed. 280; Westbrook v. Director General, 263 Fed. 211; Blevins v. Hines, 264 Fed. 1005; Erie R. Co. v. Caldwell, ——C. C. A. ——, 264 Fed. 947; Pullman Co. v. Sweeney, ——A. L. R. ——, —— C. C. A. ——, 269 Fed. 764, but further discussion of the question is rendered unnecessary by the decision of the Supreme Court of the United States in the case of Missouri Pac. R. Co. v. Ault, —— U. S. ——, 65 L. Ed. 647, where it was held that the Federal Control Act did not impose any

liability upon railroad companies on any cause of action arising out of the operation of their system by the government. In reaching this conclusion the court, speaking through Mr. Justice Brandeis, said:

"Thus, under section 10, if the cause of action arose prior to government control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the government, save for the immunity of the physical property from levy, and the power of the President to regulate suits in the public interest, as by fixing the venue, or the time for trial. If the cause of action arose while the government was operating the system, the 'carrier while under federal control' was, nevertheless, to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. See Gracie v. Palmer, 8 Wheat. 605, 632, 633, 5 L. Ed. 696, 703. The title by which suit should be brought—the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government liable. It doubtless seemed, as suggested in McNulta v. Lochridge, 141 U. S. 327, 331, 332, 35 L. Ed. 796, 799, 800, 12 Sup. Ct. Rep. 11, that suit should be brought against the transportation company 'by name "in the hands of" or "in the possesion of" a receiver,' or Director General. All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the Director General by name.

"As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the government, the provision in Order No. 50, authorizing the substitition of the Director General as defendant in suits then pending, was within his power; the application of the Missouri Pacific Railroad Company that it be dismissed from this action should have been granted; and the judgment against it should, therefore, be reversed."

It follows that the action was properly dismissed as to the railroad company.

Judgment affirmed.